NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

STACEY ANN MCCARTNEY, *Appellant.*

No. 1 CA-CR 18-0724
FILED 3-3-2020

Appeal from the Superior Court in Maricopa County
No.  CR2016-030308-001
The Honorable Marvin L. Davis, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Eric Knobloch
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Jennifer Roach
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Jennifer B. Campbell joined.

**C A T T A N I**, Judge:

¶1        Stacey Ann McCartney appeals her convictions and sentences for possession or use of dangerous drugs and possession of drug paraphernalia.  For reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2        While on patrol, a Mesa Police officer stopped McCartney after seeing her crossing the street against a "don't walk" traffic signal.  The officer noticed that McCartney was holding a brown paper bag and asked her to show him the contents of the bag.  McCartney agreed and removed a torch lighter and two pipes.  The officer then asked McCartney if she had any other contraband in her possession and if she would show him the contents of her pockets.  McCartney removed several dollar bills, loose change, and a small bag containing a crystal substance that the officer identified as methamphetamine.  McCartney admitted that the substance in the bag was methamphetamine and that she planned on smoking it later that day with the pipes she had purchased.

¶3        The officer issued McCartney a citation for a civil traffic violation, and the State later charged her with possession or use of dangerous drugs and possession of drug paraphernalia.

¶4        Before trial, McCartney moved to suppress her statements to the officer, as well as the pipes and methamphetamine he discovered.  She argued that the officer lacked reasonable suspicion to initiate the stop and that her statements were involuntarily obtained due to the officer's show of force.  McCartney thus asserted that any evidence obtained as a result of the stop was inadmissible as "fruit of the poisonous tree."  *See Wong Sun v. United States*, 371 U.S. 471, 487–88 (1963).

¶5        The superior court held an evidentiary hearing and denied McCartney's motion.  After a three-day trial, the jury found McCartney guilty as charged.  McCartney timely appealed, and we have jurisdiction under A.R.S. § 13-4033(A).

**DISCUSSION**

**¶6**      McCartney argues that the superior court erred by denying her motion to suppress because the stop was not based on reasonable suspicion, the superior court relied on a factual determination unsupported by the record, and the officer's search was tainted by an illegal seizure.

**¶7**      We review the denial of a motion to suppress for an abuse of discretion, viewing the facts in the light most favorable to upholding the superior court's ruling and considering only the evidence presented at the suppression hearing. *State v. Cornman*, 237 Ariz. 350, 354, ¶ 10 (App. 2015); *State v. Teagle*, 217 Ariz. 17, 20, ¶ 2 (App. 2007). "[W]e review de novo mixed questions of fact and law, including whether the totality of the circumstances gave rise to reasonable suspicion to support an investigative detention." *State v. Sweeney*, 224 Ariz. 107, 111, ¶ 12 (App. 2010). "We defer to the trial court's factual findings that are supported by the record and not clearly erroneous." *State v. Rosengren*, 199 Ariz. 112, 116, ¶ 9 (App. 2000).

**¶8**      A police officer may make an investigatory stop "if the officer has an articulable, reasonable suspicion, based on the totality of the circumstances, that the suspect is involved in criminal activity." *Teagle*, 217 Ariz. at 22–23, ¶ 20. Here, the record supports the superior court's conclusion that there was reasonable suspicion for the stop.

**¶9**      Under A.R.S. § 28-646(A)(2),

> A pedestrian shall not start to cross the roadway in the direction of [a "don't walk"] signal, but a pedestrian who has partially completed crossing on the walk signal shall proceed to a sidewalk or safety island while the don't walk signal is showing.

**¶10**      The officer testified that he observed McCartney walking against a "don't walk" signal. He further testified that he saw the traffic signal behind McCartney, had no reason to believe it was not synchronized with the traffic signal she was facing, and concluded that in his opinion, "technically [McCartney] should not have been crossing the street." This unrefuted testimony provided a reasonable basis for the officer to suspect McCartney was crossing the street in violation of A.R.S. § 28-646(A)(2). McCartney emphasizes that the officer did not specifically testify to seeing her *enter* the street against the traffic signal or seeing the traffic signal facing her and that consequently, the officer could not say with certainty that McCartney was disobeying the traffic signal at the time of the stop. But reasonable suspicion requires only a minimal, objective justification for an

investigatory detention, not absolute certainty that a crime has occurred. *See Teagle*, 217 Ariz. at 23, ¶ 25. And here, the officer's observations met that standard.

**¶11**        McCartney correctly points out that the prosecutor misspoke by stating that the officer testified that he specifically saw her enter the street against the traffic signal. She argues that the court improperly relied on this incorrect factual assertion to find reasonable suspicion. But the reasonable suspicion finding is supported by the record independent of the misstatement by the prosecutor.

**¶12**        Reviewing the record de novo and ignoring the prosecutor's misstated summary of the evidence, *see Rosengren*, 199 Ariz. at 116, ¶ 9, we conclude that although the evidence may not have been sufficient to establish beyond a reasonable doubt that McCartney committed a traffic violation, the officer's testimony established reasonable suspicion of such a violation. The officer's lack of certainty regarding when the signal changed would have been an issue to resolve at trial and was not fatal to a finding of reasonable suspicion.

**¶13**        Given the existence of reasonable suspicion, there was no illegal seizure to taint McCartney's subsequent consent to the search. *See State v. Hummons*, 227 Ariz. 78, 80, ¶ 9 (2011). Moreover, the court's denial of the suppression motion was based not only on reasonable suspicion, but also on the unrefuted consensual nature of the search:

> The search that followed, from everything that I understand, was consensual. The officer asked some questions, the items were produced voluntarily. The items were seized once there was suspicion confirmed—once the officer's suspicions were confirmed that they were what he believed them to be, it turned out—my understanding that they were, in fact, drugs. That's something for the jury to decide. It's something that would be proved up later.
>
> For now, there is enough to allow the case to proceed forward because the stop was good, the search was good. I'm not hearing anything that indicates anything otherwise. I understand the arguments, but based on the laws, it sounds to me as though the stop and the subsequent search were legal.

¶14 Because the record supports a finding of reasonable suspicion for the stop and the finding that the search was consensual, we affirm the superior court's denial of McCartney's motion to suppress.

## CONCLUSION

¶15 For the foregoing reasons, we affirm McCartney's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED: AA